UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV00397 ERW |
| ) | |
| JOHN J. HAWKINS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Plaintiff's Motion for Summary Judgment [doc. #41]. Plaintiff filed suit on April 2, 2004 seeking a declaratory judgment that there is no coverage under the insurance policy purchased by John and Muriel Hawkins (policy number 0Z3481466) for the injuries sustained by their son's playmate during a BB gun game.

## I. BACKGROUND[1]

On November 27, 2002, W.H., a 14-year-old minor, was playing outside with his brother, D.H. and his friends C.O., R.P., and M.H. The boys were shooting BBs at aluminum cans. Around 5:00 or 6:00 in the evening of November 27, C.O. shot W.H. in the foot. W.H. was not expecting C.O. to shoot him, and C.O. had never shot at him before this incident. About ten minutes later, W.H. and C.O. started shooting at each other with the BB guns. The other minors, D.H., R.P., and M.H. all ran out of the woods because they were afraid of being shot. W.H. shot at C.O. between four and six times. The two boys were between ten and fifteen feet

---

[1] Plaintiff argues in its Reply that Defendants did not respond to Plaintiff's statement of uncontroverted facts and that Plaintiff's recitation of the facts should be accepted as true. The Court declines to do so because Defendant did file a memorandum responding to Plaintiff's recitation of the facts [see doc. # 51].

1

apart from each other. C.O. was standing in a fort and was exposed from his mid-chest to the top of his head. The last shot hit C.O. in the eye, causing substantial injury.

Jeffrey O'Dell, and his minor son, C.O., filed suit against W.H. and his grandparents and guardians, John and Muriel Hawkins, in Jefferson County, Missouri. The petition alleges that W.H. either negligently or intentionally shot a BB gun at C.O. that resulted in the loss of C.O.'s eye. The petition also avers that John and Muriel Hawkins negligently supervised W.H. On November 1, 2004, John and Muriel Hawkins and W.H. entered into a § 537.065 Mo. Rev. Stat. (2000) settlement agreement with C.O. and Jeffrey O'Dell. The agreement provided that the Hawkins and W.H. would not be personally liable for any judgment in the Jefferson County action, and that C.O. and his father would only seek recovery from insurance policy proceeds.

John and Muriel Hawkins purchased a homeowner's insurance policy from Plaintiff Safeco Insurance Company of America (Safeco). The policy was effective from September 26, 2002 to September 26, 2003, and provided for $100,000 of person liability coverage. The policy also covered W.H., subject to its terms, conditions and exclusions. The policy included an exception for coverage in cases where an expected or intended injury occurs due to an intentional act by the insured. The exclusion provides[2]:

> **LIABILITY LOSSES WE DO NOT COVER**
> 1. Coverage E - Personal Liability and Coverage F - **Medical Payments to Others** do not apply to *bodily injury* or *property damage*:
> a. which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured*[.]"

Since the incident, W.H. has made four statements. At approximately 2:00 a.m, the morning after the incident, the police arrived at the home of W.H. to question him. W.H. told the police that C.O. shot into a board and the BB ricocheted into his eye. After the Hawkins made a claim against their policy, a representative from Safeco spoke with W.H. W.H. said that it "stung real bad" when C.O. shot him in the foot. He said that prior to the date of the incident, C.O. had

---

[2] The language in bold and italics appears that way in the written policy.

2

hit him with brass knuckles and punched his brother in the ribs. W.H. also said that he C.O. did not like him very much.

On November 30, 2004 Plaintiff took the deposition of W.H. W.H. admitted that C.O. had hit him with a ring and not brass knuckles. He also said that he and C.O. were in fact neighborhood friends prior to the incident, even though he told the Safeco representative that C.O. did not like him much. He claimed that when he spoke to the Safeco representative, he was scared and worried about protecting his grandmother. He also retracted his statement that it stung when C.O. shot him in the foot; he claimed that he was scared of getting in trouble and believed that he would look better for shooting C.O. if he said the BB stung when C.O. shot him first.

During his deposition, he testified that sometime before the incident, he had shot a .22 rifle with his grandfather. W.H. admitted that his grandmother had told him that using BB guns without an adult present was unsafe because someone could get hurt. He had used his BB gun to shoot small animals, and the animals reacted as if they had been stung. From the reaction of the animals, W.H. "thought it might have stung a little bit or something like that" when a person is shot with the BB gun. Finally, W.H. admitted that he was shooting at C.O. when the BB struck C.O. in the eye.

Finally, Defendants filed a sworn statement of W.H. along with their response to Plaintiffs' motion. The sworn statement is dated October 14, 2004, but Plaintiff had never seen it before it was filed in support of Defendants' response. The statement is highly inconsistent with W.H.'s other statements. For example, in the October 14, 2004 sworn statement, W.H. claimed that he was not aiming directly at C.O. when he shot him; in his deposition, he said he was indeed shooting at C.O. He also said that he did not expect C.O. to be injured in any way; in his deposition, he said he thought it would "sting." Finally, his statement indicates that he had never received any warnings or instruction regarding BB guns from any adults; the statement is clearly

3

inconsistent with the facts that he had used a .22 rifle with his grandfather prior to the incident and his grandmother told him that it was unsafe to play with BB guns without an adult being present.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Crumley v. City of St. Paul, 324 F.3d 1003, 1006 (8th Cir. 2003). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 1).

"'By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Hufsmith v. Weaver, 817 F.2d 455, 460 n.7 (8th Cir. 1987) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added by Supreme Court)). Material facts are "those 'that might affect the outcome of the suit under governing law.'" Id. (quoting Anderson, 477 U.S. at 247-48). Summary judgment will be denied due to a material issue of genuine fact if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Crumley, 324 F.3d at 1006. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, quoted in St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 595 (8th Cir. 2001).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. Crumley, 324 F.3d at 1006 (citing Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 487 (8th Cir. 1998)). The burden then shifts to the non-moving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson, 477 U.S. at 249. To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

In analyzing summary judgment motions, the court must view the evidence in the light most favorable to the non-moving party. Crumley, 324 F.3d at 1008. The non-moving party is given the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 586. The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." Kampouris v. St. Louis Symphony Soc., 210 F.3d 845, 847 (8th Cir. 2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." Id.

"[A] party cannot create a 'sham' issue of fact in an effort to defeat summary judgment by filing an affidavit directly contradicting prior deposition testimony." Herring v. Canada Life Assurance Co., 207 F.3d 1026, 1030 (8th Cir. 2000) (internal citations and quotations omitted). The Court finds that W.H.'s sworn statement is highly suspicious and must be disregarded. A

> party should not be allowed to create issues of credibility by contradicting his own earlier testimony. Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment.

Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir. 1988). The sworn statement of W.H. submitted by Defendants as an exhibit to their response directly contradicts much of W.H.'s deposition testimony as to the material facts of the incident giving rise to C.O.'s injuries. Although the sworn statement is dated prior to W.H.'s deposition, the statement had not ever been shown to opposing counsel prior to Defendants filing it as an exhibit to their response. The inconsistencies between W.H.'s statement and deposition testimony are not explained by the Defendants, and Defendants' recitation of the facts of the case relies largely on W.H.'s contradictory sworn statement. Therefore, because Defendants do not provide an explanation for these material inconsistencies, the Court will disregard this exhibit.

### III. DISCUSSION

Defendants have made a claim against their insurance policy to pay the costs associated with C.O.'s injuries sustained during the BB gun game. Safeco argues that there is no coverage under the policy because the policy excludes payments for injuries that are "expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured*." Safeco argues that the C.O.'s injuries were expected or intended, or, at a minimum, were foreseeable by W.H. Safeco also argues that this same exclusion applies to claims of negligence against W.H.'s grandparents, John and Muriel Hawkins.

Coverage for W.H. Shooting C.O.

Safeco seeks a declaratory judgment by the Court that no coverage under the policy exists because W.H.'s actions fall under the "intentional act" exclusion. The burden is on the insurer to prove that a claim is not covered by a policy. Cameron Mut. Ins. Co. v. Moll, 50 S.W.3d 329, 332 (Mo. Ct. App. 2001) (Moll); see also Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993). The "intentional act" exclusion is a common exclusion in personal liability insurance policies. See Farm Bureau Town & Country Ins. Co. of MO. v. Turnbo, 740 S.W.2d 232, 236 (Mo. Ct. App. 1987) (Turnbo).

6

This exclusion bars coverage if (1) the insured intended an act and (2) an injury was expected or intended to result. Amer. Family Mut. Ins. Co. v. Pacchetti, 808 S.W.2d 369, 371 (Mo. 1991) (Pacchetti); see also Moll, 50 S.W.3d at 332. An injury is "intended" if "the insured desires to cause the consequences of his act or believes the consequences are substantially certain to result." United Servs. Auto. Ass'n Cas. Ins. Co. v. Sorrells, 910 S.W.2d 774, 777 (Mo. Ct. App. 1995) (Sorrells) (citing Turnbo, 740 SW.2d at 236). An injury is expected if "the insured realized or should have realized there was a strong probability the consequences in question would result from his acts." Sorrells, 910 S.W.2d at 777-78. Recklessness by the insured is not sufficient to find that the injury was expected. Pacchetti, 808 S.W.2d at 371.

Missouri courts use a "subjective" test to determine the insured's intent. Moll, 50 S.W.3d at 332. However, it makes little difference whether the court uses a subjective or objective test because intent can "inferred from the nature and circumstances of the insured's intentional acts, especially when an intentional act results in injuries which are the natural and probable consequences of such an act." Id. at 333 (citing Amer. Family Mut. Ins. v. Franz, 980 S.W.2d 56, 58 (Mo. Ct. App. 1998) (Franz)); see also Turnbo, 740 S.W.2d 232 (intent to injure inferred when insured started a fight); Subscribers at Auto. Club Inter-Ins. Exch. v. Kennison, 549 S.W.2d 587 (Mo. Ct. App. 1977) (intent to injure inferred when insured rammed another vehicle); Hanover Ins. Co. v. Newcomer, 585 S.W.2d 285 (Mo. Ct. App. 1979) (intent to injure inferred when intoxicated insured struck another person with a machete); Federated Mut. Ins. Co. v. Madden Oil Co., Inc., 734 S.W.2d 258 (Mo. Ct. App. 1987) (intent to injure inferred when insured wrongfully repossessed a vehicle); Aetna Cas. & Sur. Co. v. Bollig, 8 S.W.2d 837 (Mo Ct. App. 1994) (intent to injure inferred when insured found dead in bed with his wife, both were dead from gun shot wounds, and the gun, also found in bed, was against the wife's head when fired); Franz, 980 S.W.2d 56 (intent to injure inferred when insured pushed child's hand into dog feces); Farmers and Merchants Ins. Co. v. Cologna, 736 S.W.2d 559 (Mo. Ct. App. 1987) (no

7

intent to injure when insured accidently fired a gun while pointing it at another person); Steelman v. Holford, 765 S.W.2d 372 (Mo. Ct. App 1989) (no intent to injure when insured fired a gun into the preceding vehicle but claimed he did not intent to shoot anyone); White v. Smith, 440 S.W.2d 497 (Mo. Ct. App. 1969) (no intent to injure when insured's sewage and pond polluted a neighbor's well); Amer. Family Mut. Ins. Co. v. Lacy, 825 S.W.2d 306 (Mo. Ct. App. 1991) (no intent to injure when insured took aim, aligned, or directed his vehicle into the path of an oncoming vehicle); Newell v. State Farm Fire and Cas., 901 S.W.2d 133 (Mo. Ct. App. 1995) (question of fact as to whether intent to injure when insured illegally tape recorded telephone conversations of a non-custodial father with his children for the apparent purpose of demonstrating that the father was attempting to alienate them from their mother); Home Indem. Co. v. Politte, 602 S.W.2d 943 (Mo. Ct. App. 1980) (no intent to injured when insured "negligently" kicked officer during an arrest). One court explained that

> [p]robing one's state of mind is an elusive task at best. Supplanting an objective standard with a subjective standard for determining whether the act or conduct of an insured is 'intentional' or 'expected or intended' for purposes of assessing coverage would emasculate apposite policy provisions by making it impossible to preclude coverage for intentional acts or conduct absent admissions by insureds of a specific intent to harm or injure. Human nature augers against any viable expectation of such admissions.

Truck Ins. Exch. v. Pickering, 642 S.W.2d 113, 116 (Mo. Ct. App. 1982). "[C]ourts are reluctant to accept the insured's own testimony as conclusive on the question of intent. Thus, an admission of specific intent is not the only way to show intent to cause harm; it can be inferred from facts and circumstances surrounding an act." Id. (internal citations and quotations omitted). However, the court recognizes that it "must be cautious in granting a motion for summary judgment when the dispositive issue is a state of mind." Chapman v. Wis. Physicians Serv. Ins. Corp., 523 N.W.2d 152, 154 (Wis. Ct. App. 1994).

Any intent to injure can be used to deny coverage even if the resulting injury was different in magnitude and character from the intended injury. "That the damage was more

8

extensive than she had anticipated does not render the exclusion inapplicable." Metro. Prop. & Cas. Ins. Co. v. Ham, 930 S.W. 2d 5, 7 (Mo. Ct. App. 1996). In fact, other jurisdictions have specifically found that an intent to "sting" another person with a BB is sufficient intent to cause injury even when more serious injuries result. See Chapman, 523 N.W.2d at 154; Bell v. Tilton, 674 P.2d 468, 473 (Kan. 1983); and Wubbena, 496 N.W.2d at 784.

The Court has not found any Missouri cases with facts similar to the instant case. However, other states have interpreted the intended act exclusion in situations where the insured injures another person with a BB gun. In Bell v. Tilton, a group of eleven-year-old boys was playing a game with BB guns. 674 P.2d at 470. Two of the boys would run across an open hay door of a barn loft while the other boy would fire the BB gun into the doorway. This game went on for some time until one of the boys peeked around the side of the open hay door and was shot in the eye. Id. The boy shooting the gun had been taught how to handle guns by his father and knew the BB gun was powerful enough to kill birds. Id. Supreme Court of Kansas held that the boy "intended to discharge the BB toward [the victim's] face and therefore it must be inferred that [the boy] intended the natural and probable consequences of that act." Id. at 475.

The result was the same in an Iowa case. In that case, three boys, ages twelve to fifteen-years-old were playing together and shooting cans with BB guns. Amer. Family Mut. Ins. Co. v. Wubbena, 496 N.W.2d 783, 783 (Iowa Ct. App. 1992). One of the boys became angry with another boy and said "I'm going to get you." Id. The angry boy grabbed one of the BB guns and started shooting at the other boy who had hid behind a tree about eighty to ninety feet away. Id. The second BB fired struck the eye of the boy who was hiding behind the tree. Id. The court held

> we have a fifteen-year-old boy with a bb gun in hand who shot twice at the victim. There can be little, if any, question that he intended to do the act which he committed. We must next determine whether he intended to cause some kind of bodily injury. . . .[W]e believe that it can be inferred as a matter of law that when a person shoots a bb gun at another, there is the intent to cause bodily injury. Some harm is inherent in and inevitably results from such act.

9

> The character of the act of pointing a bb gun at another is such that physical harm can be foreseen as accompanying it.

Id. at 785.

Plaintiff relies on Pekin Insurance Company v. Auto-Owners Insurance Company (Pekin), 630 N.W.2d 614 (Iowa Ct. App. 2001) and Morrill v. Gallagher, 122 N.W.2d 687 (Mich. 1963). In Morrill, Plaintiff sued insureds for injuries she sustained when insureds threw a firecracker into a room where plaintiff was working. Id. at 581. The court found that an exclusion in insureds' policy excluding injuries that were caused intentionally did not preclude coverage. The court held that "under the language of the excluding clause the injury must be caused 'intentionally.' There is nothing in this case to justify a conclusion that [defendants] intended to cause any physical harm to plaintiff." The exclusion in that policy did not exclude the insureds' actions because they threw the firecracker into the room as a prank; they did not throw it in the direction of any particular person to cause them injuries. However, the Court recognizes that the exclusion in Morrill contained language different from the language in the Hawkins' policy. In Morrill, the policy only excluded coverage if the injury itself was intentional; here, the policy excluded payments for injuries which were intended, *expected, or foreseeable* by the insured. The language of the Hawkins' policy excluded a much broader class of actions than the policy in Morrill, and thus, is inapplicable to this case.

In Pekin, the insured began an "impromptu game of 'bump and run'" with his friend who was driving in other car on the road. 630 N.W.2d 614, 616 (Iowa Ct. App. 2001). The game involved "the trailing vehicle driv[ing] as close as it can to the lead vehicle, at highway speeds, to the point where the two vehicles actually make contact." Id. The two had played the game before and no one was ever injured, but on this occasion, the friend was killed when his vehicle overturned after being "bumped." Id. The insured's insurance company sought a declaration that the insured's actions fell under the intentional act exclusion. Id. The court held that incident was covered by the insured's policy because he had no intent to injure his friend. Id. at 617.

In this case, the boys were fourteen years old. W.H. was shooting at C.O. with his BB gun when they were only ten to fifteen feet apart. C.O. was standing in the boys' fort so only his mid-chest and up were exposed. W.H. had shot animals with his BB gun before, and, based on their reaction, he thought that if he did hit C.O. it "might have stung a little bit or something like that." W.H.'s grandmother had warned him that he should not use his BB gun without an adult being present because it was unsafe.

The intentional act clause bars coverage when the insured's act was intentional and the resulting injury was either expected or intended to result. Pacchetti, 808 S.W.2d at 371. It is clear that W.H. shot the BB gun intentionally. The ultimate issue before the Court is whether the resulting injury was either expected or intended. Defendants argue that W.H. did not intend to injure C.O., and W.H. did not know or even think it was possible that C.O. would be this seriously injured. Defendants' arguments are not supported by the evidence in this case. Unlike Pekin, W.H. did intend or expect to injure C.O. W.H. testified during his deposition that he was shooting at C.O., not firing warning shots in his general direction. Furthermore, W.H. testified that he thought that if C.O. was hit, he would feel a sting. It is unimportant that the character and the magnitude of C.O.'s actual injury was more severe than the injury W.H. expected. See Ham, 930 S.W. 2d at 7; Chapman, 523 N.W.2d at 154; Bell, 674 P.2d at 473; and Wubbena, 496 N.W.2d at 784. This Court holds that because W.H. intentionally shot at C.O., and did intend, or at least expect to injure him, the intentional act exclusion applies and there is no coverage for W.H.'s actions under the policy.

Coverage for W.H.'s Grandparents Under Theories of Negligent Supervision

Safeco argues there is no coverage for John and Muriel Hawkins because the intentional act exclusion clause precludes coverage for each insured because of W.H.'s actions.[3] There are

---

[3]The Court notes that Defendants did not address the section of Plaintiff's motion relating to W.H.'s grandparents.

several Missouri cases that directly address the issue of whether an insured other than the insured that committed the intentional act will be covered when sued on theories such as negligent supervision. For example, in American Family Mutual Insurance Company v. Copeland-Williams, the court held that the wife of a sexual molester was not covered under an insurance policy for claims against her individually because "the exclusionary clause declares that no coverage will be given to the insureds if *any* insured has expected or intended bodily injury to another." 941 S.W.2d 625, 628 (Mo. Ct. App. 1997). See also Amer. Family Mut. Ins. Co. v. Mission Med. Group, CHTD, 72 F.3d 645, 648 (8th Cir. 1995) and Ham, 930 S.W.2d at 7. The analysis is the same in this case. The intentional act exclusion applies also to John and Muriel Hawkins because the exclusion applies to any insured whenever any insured, in this case, W.H., commits an intentional act where an injury is expected or intended. For this reason, there is no coverage for claims against the Hawkins' for negligent supervision.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [doc. # 41] is **GRANTED**.

An appropriate order of dismissal will accompany this Order.

Dated this 24th day of May, 2005.

*E. Richard Webber* (signature)

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE